STATE OF NORTH CAROLINA

COUNTY OF MECKLENBURG

W.K. PHIPPS, INC.,

               **Plaintiff,**

    **vs.**

OLD REPUBLIC NATIONAL TITLE
INSURANCE COMPANY,

               **Defendant.**

IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
21-CVS- 17613

**COMPLAINT**

      Plaintiff W.K. Phipps, Inc. complaining of Defendant Old Republic National Title Insurance Company alleges and says as follows:

## PARTIES, JURISDICTION AND VENUE

    1.     Plaintiff W.K. Phipps, Inc. ("Plaintiff" or "Phipps, Inc.") is a corporation organized and existing under the laws of North Carolina with its principal and registered place of business in Charlotte, Mecklenburg County, North Carolina.

    2.     Defendant Old Republic National Title Insurance Company ("Defendant" or "Old Republic") is, upon information and belief, a corporation organized and existing under the laws of the state of Florida.

    3.     This Court has jurisdiction over the parties and subject matter of this action.

    4.     Venue is proper in Mecklenburg County because the claims arose here, the contract at issue was executed here, the underlying property is located here, and the damages suffered by Plaintiff were incurred here.

    5.     The amount in controversy exceeds $25,000.

## FACTUAL ALLEGATIONS

    6.     Phipps, Inc. acquired that real property located at 1919 Shoreham Drive, Charlotte, North Carolina (the "Property"), including the improvements thereon (a house), on December 12, 2019 for the purchase price $878,000.00.

    7.     Phipps, Inc., through its principal, Will Phipps ("Phipps") then initiated a plan to construct a new home on the Property, which included employing various professionals to design and construct the new home from the ground up.

1



8.     At the time Phipps, Inc. purchased the Property, it knew from the property survey that there was a storm drain easement running along the left side of the yard and crossing the center of the Property.

9.     During the design process, Phipps decided to relocate the storm drain easement such that it did not cross the center of the Property. By relocating the storm drain easement, Phipps could then utilize more of the Property, and specifically a preferred portion of the Property for the new home.

10.     However, after initiating the design and construction process, a neighbor mentioned to Phipps that there was a sewer easement on the Property, potentially in the location where Phipps intended to relocate the storm drain easement.

11.     This was the first time Phipps heard about a sewer easement on the Property.

12.     Unfortunately for Phipps, the neighbor was correct: on February 20, 1952, then-owners of the Property, Julian Townly Chase and March Chase granted an easement to Sharon Sanitary District (the "Sewer Easement").

13.     More unfortunate still, the location of the Sewer Easement interfered with the ideal relocation of storm drain easement. Because neither easement may encroach on the other Phipps' design plan had to be drastically reimagined.

14.     Specifically, Phipps had to invert the *entire* plan for the new home, which included, by way of example:

    a.  Moving the garage and driveway to the opposite side of the Property;

    b.  Reducing the size and capacity of the garage from 3 cars to 2;

    c.  Reorienting the garage doors; and

    d.  Ultimately losing 10 feet of the developable area in the front yard, and additional area in the backyard as a result of the unavoidable driveway placement.

15.     Not only was Phipps suddenly and unexpectedly denied the new home he envisioned, he was also left with an altogether lesser amount of usable property area based on the surprise Sewer Easement.

16.     Fortunately for Phipps, at the same time Phipps, Inc. purchased the Property, it contemporaneously acquired title insurance from Old Republic.

17.     Effective December 12, 2019, Old Republic issued the Owner's Policy of Title Insurance, policy no. OX12378395 (the "Policy") to Phipps, Inc.

2

18. The Policy was negotiated and entered into in North Carolina.

19. On March 25, 2020, immediately upon learning of the potential Sewer Easement, Phipps submitted a notice of claim to Old Republic.

20. On April 20, 2020, Old Republic confirmed that the Property is subject to and burdened by the Sewer Easement, and critically, Old Republic accepted coverage for the Sewer Easement. A copy of the April 20, 2020 letter from Old Republic accepting coverage is attached as **Exhibit A**.

21. Although Old Republic's acceptance of coverage ought to have been the beginning of the end of this dispute, it was not.

22. Section 8(a) of the Policy provides that "[t]he extent of liability of the Company for loss or damage under this policy shall not exceed. . . the difference between the value of the Title as insured and the value of the Title subject to the risk insured against by this policy."

23. The extent of Old Republic's liability is therefore the difference between, on the one hand, the value of the Property "without" the Sewer Easement, representing the condition under which Phipps, Inc. purchased the Property, and on the other hand, the value of the Property "with" the Sewer Easement, representing the risk that Old Republic insured against at the time Phipps, Inc. purchased the Property, which reduced the Property's value

24. On May 27, 2020, Fortenberry Lambert, Inc. ("Fortenberry") prepared an appraisal report for Old Republic purporting to analyze the value of the Property both "with" and "without" the Sewer Easement.

25. Fortenberry's appraisal concluded that whereas the value of the Property "without" the Sewer Easement was $825,000, the value of the Property "with" the Sewer Easement is $800,550, for a net difference of $24,450.

26. Troubled by Fortenberry's analysis in light of the hugely disruptive nature of the Sewer Easement and resulting inability to maximize usable space on the Property (e.g. location of the driveway and orientation of the home and garage), Phipps obtained a second appraisal.

27. On December 23, 2020, Bidencope & Associates ("Bidencope") prepared an appraisal report analyzing the value of the Property both "with" and "without" the Sewer Easement.

28. Bidencope's appraisal concluded that whereas the value of the Property "without" the Sewer Easement was $876,000, the value of the Property "with" the Sewer Easement is $700,800, for a net difference of $175,200.

29. Fortenberry's appraisal fails to accurately and entirely address the impact of the Sewer Easement on the value and usability of the Property.

3

30.     Bidencope's appraisal, in contrast, accurately reflects the hugely detrimental impact of the Sewer Easement on the value and usability of the Property.

31.     The value of the Property, subject to the surprise Sewer Easement for which Old Republic has accepted coverage, is at least $175,200.00.

32.     Old Republic mailed Phipps, Inc. a check for $24,500.00 which Phipps, Inc. accepted expressly without waiving its right to recover the full amount of $175,200.00. Applying the $24,500.00 to the $175,200.00 owed, Phipps, Inc. is entitled to recover $150,700.00 from Old Republic.

## FIRST CLAIM FOR RELIEF
### [Breach of Contract]

33.     Plaintiff realleges and incorporates by reference the allegations contained in the preceding paragraphs.

34.     The Policy is a valid and enforceable contract supported by valid and adequate consideration.

35.     Plaintiff complied with all of its material duties and obligations under the Policy.

36.     Old Republic materially breached the Policy by failing to adequately indemnify Plaintiff for the loss suffered under the Policy based on the risk insured against by the Policy, namely, the Sewer Easement.

37.     As a direct and proximate result of Old Republic's material breach of contract, Plaintiff has incurred damages in an amount to be determined at trial, but well in excess of $25,000.

## SECOND CLAIM FOR RELIEF
### [Declaratory Judgment - N.C.G.S. § 1-253, *et seq.*]

38.     Plaintiff realleges and incorporates by reference the allegations contained in the preceding paragraphs.

39.     The Policy provides coverage for the damages suffered by Plaintiff – the diminution in the value of the Property based on the Sewer Easement – and Old Republic is obligated to indemnify Plaintiff for all such damages.

40.     There exists a real and justifiable controversy between the parties as to Old Republic's rights and obligations under the Policy.

41.     Phipps, Inc. seeks a declaration pursuant to Rule 57 of the North Carolina Rules of Civil Procedure and the North Carolina Declaratory Judgment Act, N.C.G.S. § 1-253, *et seq.*, establishing that:

4

a. Old Republic is required to indemnify Phipps, Inc. under the terms of the Policy for its damages arising from the Sewer Easement, namely the diminution in the value of the Property in light of the Sewer Easement;

b. Old Republic breached the Policy by failing and refusing to adequately indemnify Phipps, Inc. for its damages arising from the Sewer Easement; and

c. Phipps, Inc. is entitled to recover $150,700.00 from Old Republic based on the damages arising from the Sewer Easement.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully prays for the following relief:

1. Entry of judgment awarding Plaintiff its actual, incidental, and consequential damages for Old Republic's breach of contract, plus interest;

2. For entry of declaratory relief as against Old Republic, as set forth above;

3. That the costs of this action be taxed against Old Republic;

4. For a trial by jury on all issues so triable; and

5. For all such other and further relief that the Court deems just and equitable.

This the 2nd day of November, 2021.

JAMES, McELROY & DIEHL, P.A.

Adam L. Ross
Alexandra B. Bachman
525 N. Tryon Street, Suite 700
Charlotte, North Carolina 28202
Telephone: (704) 372-9870
Facsimile: (704) 333-5508
Email: aross@jmdlaw.com;
        abachman@jmdlaw.com
*Attorneys for Plaintiff*

5



# OLD REPUBLIC NATIONAL TITLE INSURANCE COMPANY

1408 North Westshore Blvd., Suite 900, Tampa, FL 33607

Stephanie L. Davis
Vice President/Claims Counsel
Corporate Legal Department
T: 813.514.2839
F: 813.830.7218
sdavis2@oldrepublictitle.com

April 20, 2020

W. K. Phipps, Inc.
C/o Will Phipps
Via email only (will@wkphipps.com)

Re:    Claim No.:              338090
       Insured:               W. K. Phipps, Inc. ("Insured")
       Property:              1919 Shoreham Drive, Charlotte, NC 28211 ("Property")
       Owner's Policy No.:    OX12378395 ("Owner's Policy")
       Loan Policy No.:       LX12441682 ("Loan Policy")

Dear Mr. Phipps,

Old Republic National Title Insurance Company (the "Company") has reviewed the matters set forth in your notice of claim submitted via email on March 25, 2020, concerning an easement encumbering the Property.

The facts, as I understand them, are as follows: the Insured purchased the Property on or about December 6, 2019. At the time of purchase, the Insured was aware the Property was burdened by the Permanent Easement for Storm Drainage in favor of the City of Charlotte, recorded May 4, 1999, in Book 10450, Page 578, of the Mecklenburg County Registry. Your notice of claim states that, subsequent to its purchase, the Insured became aware of an additional easement which burdens the Property. Specifically, the easement was created in the Right-of-Way Agreement granted by Julian Townly Chase and Mary Chase in favor of Sharon Sanitary District, recorded Feb. 20, 1952, in Deed Book 1537, Page 447 (the "Sewer Easement"). The Sewer Easement is located on the following portion of the Property:

> A right-of-way and easement ten feet in width to be adjacent to and parallel with the northeastern line of said Lot 13, said right-of-way and easement to begin at the rear lot line of said lot and run thence along said northeastern line to the eastern edge of Shoreham Drive.

Based on the documentation you provided, the information known to the Company and the relevant law, we are now able to render a coverage determination. Our investigation confirmed the Property is burdened by the Sewer Easement. As such, the Company accepts coverage for the Sewer Easement. As the Company is still investigating how it will resolve the claim, the Company reserves its rights under Conditions 5 and 7 of the Policy. We will be in contact with you as soon as possible to inform you how we intend to resolve the claim.



OLD REPUBLIC INSURANCE GROUP

Please note that reference to any particular provision of the Policy in this letter shall not be construed as a waiver of any of the Company's rights under the Policy or at law. The foregoing is based upon information presently known to the Company and the Company reserves the right to supplement this letter, modify its position and/or raise additional Policy provisions should the Company become aware of information that would justify such action. The Company also reserves the right to disclaim liability on additional grounds.

Sincerely,

Stephanie L. Davis
VP/Claims Counsel

OLD REPUBLIC INSURANCE GROUP